[No. 5822. Decided March 5, 1906.]

MARY A. MURPHY et al., Appellants, v. T. A. MURPHY et al., Respondents.[1]

PLEADINGS — DEMURRER — AMENDMENTS. Upon sustaining a demurrer to a petition and granting leave to amend, the court is not thereby precluded from overruling a demurrer to an amended petition stating substantially the same facts with some additional averments.

EXECUTORS AND ADMINISTRATORS—ESTATE OF NONRESIDENT—NECESSITY OF ADMINISTRATION. It is unnecessary to administer upon the estate of a nonresident testator who never resided in this state, and who left no personal property here, after the lapse of more than ten years after his death, he having left no debts and there being no liens upon the real estate of which he died seized, Bal. Code, § 4642, providing that in such case the estate shall vest immediately in the heirs without the necessity of administration.

SAME—APPOINTMENT AND REMOVAL. The court in probate has the power to revoke the appointment of an administrator c. t. a. upon the application of the heirs upon its being made to appear that there is no legal necessity for administration.

Appeal from a judgment of the superior court for King county, Frater, J., entered May 12, 1905, after a hearing on the merits, discharging an administrator c. t. a., upon the application of the devisees. Affirmed.

F. C. Kapp, for appellants. The superior court had exclusive jurisdiction. Hanford v. Davies, 1 Wash. 476, 25 Pac. 329; Kerr v. Moon, 22 U. S. 565, 22 L. Ed. 161. Nor would the fact of the testator's death oust it of jurisdiction. McKee v. Simpson, 36 Fed. 248; Healy v. Buchanan, 34 Cal. 567; Grimes v. Talbert, 14 Md. 169. When a litigant waives a demurrer he is conclusively bound thereby. Watson v. Town of Kent, 35 Wash. 21, 76 Pac. 297; Healy v. King County, 37 Wash. 184, 79 Pac. 624. The court had no power to make a ruling inconsistent with a former ruling still in force. Buffalo Pitts Co. v. Dearing, 37 Wash. 591, 79 Pac.

[1]Reported in 84 Pac. 646.

1104; *Morrison v. Berlin,* 37 Wash. 600, 79 Pac. 1114. An administrator, after his appointment, can only be removed or discharged upon statutory grounds. *Morgan v. Dodge,* 44 N. H. 255, 82 Am. Dec. 213; *Miller v. Hider,* 9 Colo. App. 50, 47 Pac. 406; *In re Strong's Estate,* 119 Cal. 663, 51 Pac. 1078. The probate court has no discretion to refuse administration of an estate, when it is applied for by an heir or devisee. *In re Pina's Estate,* 112 Cal. 14, 44 Pac. 332; *Langsdale v. Woollen, Adm'r,* 99 Ind. 575; *Blake v. Kearney,* 30 La. Ann. 388; *Succession of Buillard,* 111 La. Ann. 186, 35 South. 508; *Williamson v. Mason,* 18 Ala. 87; *Marshall v. Crow's Adm'r,* 29 Ala. 278. Under the undisputed facts an administration is absolutely necessary. *Hanford v. Davies,* 1 Wash. 476, 25 Pac. 329; *Ferguson v. Templeton* (Tex. Civ. App.), 32 S. W. 148; *Chamberlin's Appeal,* 70 Conn. 363, 39 Atl. 734, 41 L. R. A. 204; *Wing v. Hall,* 47 Vt. 182; *In re Nugent's Estate,* 77 Mich. 500, 43 N. W. 889; *Appeal of McCarty,* 81 Mich. 460, 45 N. W. 996; *Griesemer v. Boyer,* 13 Wash. 171, 43 Pac. 17; *Kapp v. Public Adm'r,* 2 Bradf. (N. Y. Surr.) 258; *Burch v. Burch,* 19 Ga. 174; *Cushman v. Albee,* 183 Mass. 108, 66 N. E. 590.

*James Kiefer* and *Hughes, McMicken, Dovell & Ramsey,* for respondents, to the point that the court was not bound to grant an administration merely because one of the devisees requested it, irrespective of the fact whether or not administration was necessary, cited: Bal. Code, §§ 4642, 6141; 1 Woerner, American Law of Administration, §§ 199, 201; 11 Am. & Eng. Ency. Law (2d ed.), 742; *Fretwell v. McLemore,* 52 Ala. 124; *Tucker v. Brown,* 9 Wash. 357, 37 Pac. 456; *Griffin v. Warburton,* 23 Wash. 231, 62 Pac. 765; *Anrud v. Scandinavian-American Bank,* 27 Wash. 16, 67 Pac. 364; *Akin v. Akin,* 78 Ga. 24, 1 S. E. 267; *Gwin v. Melvin,* 9 Idaho 202, 72 Pac. 961; *Flood v. Pilgrim,* 32 Wis. 376; *Wright v. Smith,* 19 Nev. 143, 7 Pac. 365; *Saul v. Frame,* 3 Tex. Civ. App. 596, 22 S. W. 984; *Granger v.*

*Harriman,* 89 Minn. 303, 94 N. W. 869; *Angier v. Jones,* 28 Tex. Civ. App. 402, 67 S. W. 449; *Succession of Graves,* 50 La. Ann. 435, 23 South. 738.

CROW, J.—On December 11, 1893, one J. H. Murphy died testate in Wahsington, D. C., being then a resident of that city. On January 23, 1894, his last will and testament was duly admitted to probate by the district court of the state of Iowa, in and for Scott county, a court of competent jurisdiction. Scott county, Iowa, seems to have been the previous domicile of said decedent, and he left there a considerable estate. Said decedent left surviving him his widow, one Mary A. Murphy, appellant herein, and two children, T. A. Murphy, a son, and Jessie A. Murphy, a daughter, respondents herein, his only heirs at law. The will provided for the payment of debts and certain special bequests, and that the residue of the estate should be distributed to Mary A. Murphy, T. A. Murphy and Jessie A. Murphy, share and share alike. It also provided that said residue of the estate should be held for five years after the death of the testator; that during said period the executor should make certain semi-annual payments to the widow and daughter of decedent from the income of their shares, and that at the end of said five years final distribution should be made. All debts and legacies were fully paid, and final distribution and settlement of the estate were had in the state of Iowa, prior to any attempted administration in this state.

The decedent left in King county, Washington, a considerable interest in real estate, but no personal property. He held an equitable title to such real estate, the record legal title being in respondent, W. M. Desmond, who held the same in trust for said J. H. Murphy. W. M. Desmond at all times recognized the rights of J. H. Murphy and of his estate, and was willing to transfer his interests by appropriate conveyances to the parties entitled thereto.

On January 16, 1905, more than eleven years after the

death of said J. H. Murphy, appellant Mary A. Murphy, his widow, caused to be filed in the superior court of King county, in this state, a petition for the purpose of having the last will and testament of said J. H. Murphy probated as a foreign will, and also having appellant R. P. Oldham appointed administrator c. t. a. Said petition, *inter alia,* alleged the probate of said will in Scott county, Iowa, and that J. H. Murphy died seized of certain real estate in King county, describing the same. An order was made fixing a time for hearing, proper notice was given, and on February 2, 1905, the will was admitted to probate as a foreign will, and appellant R. P. Oldham was appointed administrator c. t. a. The administrator qualified, notice to creditors was published, and on April 7, 1905, the administrator filed a petition in the probate department of the superior court of King county, alleging the legal title of the decedent's interests in said real estate to be in W. M. Desmond, and asking that he be cited to appear, and ordered to convey to the administrator. W. M. Desmond appeared, acknowledged the interests of said decedent, and stated that he was willing to convey the same to the proper parties, but alleged that the respondents T. A. Murphy and Jessie A. Murphy objected to his making any conveyance to the administrator.

Respondents T. A. Murphy and Jessie A. Murphy, being nonresidents of Washington, knew nothing of the application for the probate of said will and appointment of an administrator in King county until the appointment had been made. On March 30, 1905, they appeared by petition and alleged they were children, legatees, and sole heirs at law of the decedent; that J. H. Murphy's will had been admitted to probate in Iowa, where his estate had been fully settled and distributed; that during his lifetime he had acquired interests in real estate in King county, Washington; that he left no personal property in Washington; that W. M. Desmond, holding the legal title to said real estate, had been at all

times ready and willing to deliver deeds to said Mary A. Murphy, and to the petitioners for their respective shares; that there were no taxes or liens on said real estate; that J. H. Murphy was never during his lifetime a resident of the state of Washington; that he never had any debts therein; that said Mary A. Murphy and the petitioners, T. A. Murphy and Jessie A. Murphy, were the only persons interested in said estate, and were all of full age at the date of said testator's death; that no necessity existed for administration within the state of Washington, and that an administrator would entail large and unnecessary expense upon said petitioners, and said estate. The petitioners prayed an order revoking and setting aside the order appointing R. P. Oldham as administrator, and also asked for other relief.

To this petition the administrator interposed a demurrer, which being heard in the absence of the petitioners, was sustained, leave being given to amend. On April 7, 1905, an amended petition was filed, in substance the same as the original, but containing an additional allegation to the effect that said probate proceedings were instituted by the widow of decedent for the purpose of harassing and annoying petitioners, and for the further purpose of securing to herself a widow's allowance. The administrator moved to strike the amended petition, which motion being denied, he then demurred, and the demurrer was overruled.

The administrator thereupon answered, denying certain allegations of the amended petition, and making affirmative allegations not necessary to be here stated, as the controlling facts appear to be as above detailed and are not seriously disputed. The petitioners interposed a demurrer to this answer, which was sustained, and an amended answer being filed, a demurrer thereto was also sustained. Thereupon a hearing was had, and the trial court having found that there was no legal necessity for an administration in this state, made an order revoking the letters of administration, discharging said R. P. Oldham, and directing the petitioners,

T. A. Murphy and Jessie A. Murphy, to pay two-thirds of
the taxable costs and disbursements expended herein by said
Mary A. Murphy, the same amounting to $18.75. The court
also ordered said W. M. Desmond to convey to said Mary A.
Murphy, by proper deeds, her undivided interest in said real
estate. From said final orders, the widow and administrator
have appealed to this court.

Appellants contend the trial court erred in refusing to
strike the amended petition, and also in overruling their de-
murrer thereto, insisting that, after a demurrer had been
sustained to the original petition, the court could not law-
fully overrule a demurrer to what was in substance the same
pleading, especially without modifying its former ruling.
We think there is no merit in this suggestion. The court
granted leave to amend, an amendment was made, and the
second demurrer was properly overruled.

Although several assignments of error have been made, the
controlling questions herein are: (1) Could the trial court,
after entering an order appointing an administrator, lawfully
revoke said appointment and discharge him? (2) Could the
trial court lawfully refuse the demand of the widow and
legatee, Mary A. Murphy, for an administration in this state
on the ground that it was unnecessary? These questions can
be discussed together.

Appellants contend that the administration is necessary
and must accompany the probate of the foreign will. In
support of their position they cite *Hanford v. Davies,* 1
Wash. 476, 25 Pac. 329, which we do not think applicable,
by reason of the subsequent statute of 1895, Bal. Code,
§§ 4640-4645. The decedent had neither debts nor personal
estate in the state of Washington. He had never been a resi-
dent of this state. If he ever had incurred debts here, they
were barred as claims against, or liens upon, any real estate
of which he died seized. Bal. Code, § 4642. This being
true, it was not necessary to administer his estate in Wash-
ington for the purpose of freeing his real estate from liability

for any possible debts, and after his will had been probated and a showing had been made that his estate had been fully settled in Iowa, and all debts there had been paid, it was unnecessary to administer here for the purpose of ordering any disposition of said real estate to his legatees. Section 4640, Bal. Code, provides:

"When a person dies seized of lands, tenements or hereditaments, or any right thereto or entitled to any interest therein in fee or for the life of another, his title shall vest immediately in his heirs or devisees, subject to his debts, family allowance, expenses of administration and any other charges for which such real estate is liable under existing laws. No administration of the estate of such decedent, and no decree of distribution or other finding or order of any court shall be necessary in any case to vest such title in the heirs or devisees, but the same shall vest in the heirs or devisees instantly upon the death of such decedent: Provided, That no person shall be deemed a devisee until the will has been probated. . . . .

Then follows § 4641, which provides that said act of 1895 shall apply to and govern the transmission of title of lands in case of the estates of persons already deceased.

Woerner, in 1 American Law of Administration, at § 199, says:

"The necessity of official administration, that is to say, of obtaining a grant of letters testamentary or of administration, as the case may be, and the judicial sanction of payment of debts and legacies out of the estate and the distribution of the residue, arises out of the common-law doctrine that the personal property of a decedent descends to the executor or administrator, while his real estate descends to the devisees or heirs, subject, under English and American statutes, to the payment of his debts and legacies."

In § 201, Mr. Woerner says:

"The rights of creditors to the assets of a deceased person is the principal reason for requiring official administration, and courts, therefore, sanction the disposition of the property of a decedent without the appointment of an administrator where it is certain that no debts are owing."

"It may be stated generally that the question of necessity for administration is one for the court having probate jurisdiction, and it appears to be a matter resting largely in the discretion of the court, especially where there are no debts, whether an administration shall be had or the estate awarded to the persons entitled to it without any administration. In some states there are statutes providing that administration shall not be granted after a certain time from the death of the decedent, and even in the absence of statute a long lapse of time since the death of the decedent without administration may raise a presumption against the necessity for any administration." 18 Cyc. 60.

If there be an administration of this estate in King county, the only possible duty devolving upon the administrator would be to secure an order of distribution, which would be superfluous, as the rights of the legatees in and to said real estate have, under our statutes, already vested in them, so that no decree of any court is needed to protect their title. All possible debts which might have been proven have been long since barred, and could not be a lien upon said real estate.

In *Fretwell v. McLemore*, 52 Ala. 124, Brickell, C. J., says:

"A court of equity will dispense with an administration, and decree distribution directly, when it affirmatively appears, that, if there was an administrator, the only duty devolving on him would be distribution. Then administration is regarded as a 'useless ceremony.'"

This language is cited with approval by Mr. Woerner, in § 201, of his work on the American Law of Administration.

The Am. & Eng. Ency. Law (2d ed.), Vol. 11, at page 742, states the law thus:

"The principle of the common law that the title to a decedent's personal estate passes to his personal representative makes administration necessary if there are creditors of the estate, so as to enable the creditors to bring suit and subject the property of the estate to the payment of the debts. In those jurisdictions, however, where the title to a decedent's

property vests in the heirs, subject only to the payment of debts, the rule is different, and the heirs may dispense with the necessity of administration by paying the debts."

In this case there was no personal property remaining to be administered, nor were there any debts to be paid. The assets of the decedent in this state being only an equitable title to real estate, such title had vested in the devisees, and their rights had become absolute under the statute, without the necessity of any administration or any decree of distribution. *Tucker v. Brown,* 9 Wash. 357, 37 Pac. 456; *Griffin v. Warburton,* 23 Wash. 231, 62 Pac. 765; *Anrud v. Scandinavian-American Bank,* 27 Wash. 16, 67 Pac. 364.

In view of the above authorities, we are of opinion that, under the facts shown, no real necessity existed for any administration in this state, eleven years having elapsed since the testator's decease, and his estate in Iowa having been fully settled there by a court of competent jurisdiction. Had any good and sufficient reason existed at any time for administration in Washington, the interested party desiring the same should have applied for the appointment of an administrator within at least six years after the death of said J. H. Murphy. We think the trial court committed no error in finding the administration unnecessary. *Flood v. Pilgrim,* 32 Wis. 376; *Granger v. Harriman,* 89 Minn. 303, 94 N. W. 869; *Succession of Graves,* 50 La. Ann. 435, 23 South. 738.

An administrator, however, was actually appointed, and appellants now contend the court had no authority to revoke such appointment, except upon statutory grounds. We do not think this contention can be sustained. The court did not remove him for the purpose of appointing a successor, but for the sole purpose of ending an unnecessary administration, which, for reasons above stated, was a proper order.

The judgment is affirmed.

Mount, C. J., Root, Dunbar, Hadley, Fullerton, and Rudkin, JJ., concur.